UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------

LILY MENG, *on behalf of herself*
 *and all others similarly situated,*

                    Plaintiff,

v.

THE NEW SCHOOL,

                    Defendant.

------------------------------------

Case No. 1:23-cv-3851

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Lily Meng, by and through her undersigned counsel, brings this Class Action Complaint against Defendant, The New School ("New School" or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Higher education is no different from any other industry in as much as consumers (*i.e.*, students) have the ability to shop between different educational products offered by competitive institutions before ultimately purchasing the product that is right for them.

2. Some colleges and universities offer an educational product without access to a campus or in-person community, while others offer an educational product with access to a varied suite of services, activities, facilities, and experiences through an on-campus, in-person educational experience.

3. New School offers students the option to pick either: (1) online classes, or (2) an on-campus, in-person educational experience in New York City, New York.

1

4. Plaintiff, an undergraduate student during the Spring 2020 semester, chose and paid tuition and fees to enroll in New School's on-campus, in-person education program, including all the benefits and services associated therewith for the entirety of the semester.

5. Plaintiff's paid-for experience was cut short mid-way through the spring of 2020, when that in-person educational experience was taken away from Plaintiff and other students at New School.

6. In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that causes the COVID-19 disease (the "COVID-19 pandemic"), New School, like many other universities, transitioned to remote online-only education, canceled on-campus recreational events, canceled student activity events, and ordered students to refrain from going on campus.

7. As a result, all on-campus education, services, and amenities were no longer available to New School students.

8. Despite the harsh reality that students could no longer enjoy the benefit of the bargain for which they pre-paid, New School refused to provide a prorated refund of tuition or fees tied to on-campus education, services, and amenities that were not available to students for a significant part of the Spring 2020 semester.

9. Accordingly, the students have lost the benefits of the bargain for services and the experience they paid for but could no longer access or use.

10. By not giving prorated refunds for tuition or fees charged for on-campus education and services not provided, New School breached its contracts with students.

11. It cannot be disputed that the circumstances underlying this legal action are unfortunate and unprecedented. However, the students did not choose these circumstances, and they certainly did not agree to pay tuition and fees for online-only education and services.

12.     It is unfair and unlawful for New School to retain tuition and fees for campus-based in-person education and services not being provided and to pass the financial losses on to the students.

13.     Importantly, Plaintiff does not challenge Defendant's discretion in adhering to federal, state, and local health guidelines, but rather challenges Defendant's decision to retain the tuition and fees, paid by Plaintiff and other students for in-person education, experiences, access to campus, and services, without providing such.

14.     Plaintiff brings this class action for damages, restitution, and declaratory relief resulting from New School's retention of the tuition and fees paid by Plaintiff and the other putative Class Members for in-person education and services not being provided. Specifically, this lawsuit seeks disgorgement of the prorated, unused amounts of the fees that Plaintiff and other putative Class Members paid, but for which they (or the students on behalf of whom they paid) were not provided the benefit, as well as a partial prorated tuition reimbursement representing the difference in fair market value between the on-campus product for which they had paid, and the online product that they received.

## PARTIES

15.     Plaintiff, Lily Meng, is an adult, who at all relevant times, is a resident and citizen of the State of New York. She paid tuition and fees for the Spring 2020 semester. Halfway through the Spring 2020 semester, Plaintiff was forced to take her classes remotely, refrain from visiting campus, and prevented from utilizing various on-campus services for which she paid.

16.     Plaintiff enrolled at New School for the Spring 2020 semester, which was scheduled to run from approximately January 21, 2020 through May 11, 2020. Plaintiff did not have access to the campus after March 13, 2020 because the campus was closed due to COVID-19. Plaintiff

paid tuition and fees for the Spring 2020 semester, the benefits of which she lost because New School closed the campus and cut off access to on-campus services, facilities, and extracurricular activities.

17. Defendant, New School, is a university founded in 1919. New School offers numerous major fields for undergraduate students, as well as a number of graduate programs. Defendant's undergraduate and graduate programs include students from across the United States and around the world. Its principal campus is located in the borough of Manhattan, New York City, New York. Defendant is a citizen of New York.

## JURISDICTION AND VENUE

18. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

19. This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant conducts substantial business by operating its principal campus in this District, and solicits students residing in this District to attend its institution.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, specifically, the contracts that are the subject of this action were formed in this District, and the performance and breach of contract also occurred in this District.

## **FACTUAL ALLEGATIONS**.

21. Every New School student, prior to enrolling in classes, is presented with the option of taking online classes, or on-campus and in-person classes.

22. To enroll in classes, New School students are required to pay tuition and some form of mandatory fees. The Spring 2020 semester was scheduled to commence on or about January 21, 2020, and end on or around May 11, 2020.[1]

23. Tuition for the Spring 2020 semester was between $24,380 and $25,230 for full-time undergraduate students. Tuition for graduate students enrolled in a program that charged per credit was between $1,625 and $2,260 per credit, while tuition for graduate students enrolled in programs charging a single, full-time tuition rate was between $15,830 and $25.875.[2]

24. New School uses its marketing materials, course catalogue, and other bulletins to solicit students for its on-campus programs.

25. For example, New School's website describes its on-campus services and facilities and the benefits of personal contacts with faculty and staff. Specifically, New School's website describes its "Academic Approach:"

> "Our small classes put students face-to-face with leading faculty, where they can ask questions, delve deep, iterate, postulate, and collaborate. Through intensive project-based learning and research, students gain hands-on experience that can be put to use as soon as they graduate."[3]

26. New School's viewbook, targeted toward prospective students for its Eugene Lang College, similarly advertised that course offerings are "rarely a lecture and always a roundtable of creative intellectuals . . . [s]mall, intimate, and engaging," where "[a]cademic and social

---

[1] https://www.newschool.edu/academic-catalog-2019-2020.pdf, at 2 (last visited May 8, 2023).
[2] http://web.archive.org/web/20190830041923/https://www.newschool.edu/tuition-fees-billing/current-tuition/ (last visited May 8, 2023).
[3] http://web.archive.org/web/20191120171644/https://www.newschool.edu/academics/excellence-rigor/ (last visited May 8, 2023).

interactions with both faculty mentors and fellow students create a space where critical theory and diverse viewpoints are cultivated, nurtured, and challenged."[4]

27.     New School repeatedly advertises the academic benefits of on-campus resources. For example, New School's website highlights approximately 40 centers, institutes, and labs that are "integrated into [its] Greenwich Village campus" and that serve the New School's academic mission:

> "Academic study and creative learning happen inside and outside of the classroom at The New School. Across the campus, students and faculty come together in interactive, collaborative spaces to rethink, redesign, and reimagine the world. In these labs, centers, facilities, and institutes, scholarly rigor and intellectual freedom collide, generating groundbreaking work that challenges the way we traditionally approach problems and their solutions."[5]

28.     Similarly, on the website for the College of Performing Arts, New School highlights that its "world-class performing arts building, Arnold Hall, is specifically designed for artists of all kinds, with state-of-the-art practice rooms, recording facilities, sound booths, ensemble classrooms, adjustable performance spaces, and percussion classrooms." New School even advertises that its on-campus experience is *unique* as "the only college with a performance venue in our lobby, the Glass Box Theater."[6]

29.     Further, in New School's viewbook, it advertises that that its "state-of-the-art facilities," such as Sheila C. Johnson Design Center, the New School Libraries & Archives, the Performance Space at 55 West 13th Street, numerous collaborative centers, institutes, and labs, among other facilities, all supported the University's commitment to "ensure[ ] that all New School

---

[4] The New Schools, 2019 Lang Viewbook, https://issuu.com/newschool/docs/2019-tns-lang, at 16 (last visited May 8, 2023).
[5] http://web.archive.org/web/20191017091319/https://www.newschool.edu/academics/research-centers-institutes-labs (last visited May 8, 2023).
[6] http://web.archive.org/web/20230128000143/https://www.newschool.edu/performing-arts/student-life/ (last visited May 8, 2023).

6

students are firmly planted in an environment that helps them achieve and surpass their intellectual and creative goals."[7]

30. Moreover, in advertising and soliciting students to attend the university, New School advertises its location in New York City as a central element of the academic experience. The New School advertises that students are "Immersed in New York City:"

> Situated in the heart of Greenwich Village, the streets become your hallways. Your intellectual and creative journey begins in the place where some of the greatest musicians, artists, thinkers, and makers have honed their craft and ideas. Simply walking from class to class puts you in the heart of one of the most creative neighborhoods in the world."[8]

31. Similarly, New School's website describing "Campus Life" advertises that "[r]ather than considering New York City to be merely the home of our university, we employ it as an extension of our campus and as an integral part of an educational experience that gives students access to the thinkers and doers who make the city a global cultural leader."[9]

32. New School's component colleges make even more specific representations about the benefits of attending a university in New York City. For example, the website of the College of Performing Arts describes campus life to prospective students:

> "Surround yourself with legendary teachers and mentors, faculty who will guide your development as a performer and train you to be a 21st-century artist. Find yourself integrated in New York City's vibrant artistic community, gaining hands-on experience performing across the city, as well as around the world."[10]

---

[7] The New School, 2019 Pan-University Viewbook, https://issuu.com/newschool/docs/19tns-pan at 51 (last visited May 8, 2023).
[8] http://web.archive.org/web/20191017091443/https://www.newschool.edu/campus-community/campus-city-guide/immersed-in-nyc (last visited May 8, 2023).
[9] http://web.archive.org/web/20191017091435/https://www.newschool.edu/campus-life (last visited May 8, 2023).
[10] http://web.archive.org/web/20191017091358/https://www.newschool.edu/performing-arts/ (last visited May 8, 2023).

33. New School's Eugene Lang College advertises that "New York offers excellent opportunities to get involved in the issues that matter to you, and you can even earn credit for doing it, whether through class work or a fellowship or internship."[11]

34. New School's Parsons School of Design similarly emphasizes the centrality of New York City to its students' academic success, stating that "[e]veryone should live in New York City at least once. Situated in the heart of Manhattan, Parsons students live, work, and dream in one of the world's great cities. It is Parsons' most important classroom."[12]

35. Plaintiff and members of the Class paid their tuition in the Spring 2020 semester to enjoy everything New School offered them, including the campus location, community, and in-person education.

36. New School's electronic course catalogue offers students the option to filter the list of classes, to show either in-person classes or those offered online.[13] Therefore, when enrolling in classes, New School students make informed choices about whether to attend in-person or online.

37. When enrolling in classes for Spring 2020, Plaintiff and members of the Class chose to enroll in classes offered in-person, to obtain the benefits outlined above.

38. Plaintiff and members of the Class were also required to pay a mandatory fee (the "Mandatory Fee") in the amount of $608 for the Spring 2020 semester. The Mandatory Fee included a fee for university services and student senate fee.[14]

---

[11] http://web.archive.org/web/20190923161445/https://www.newschool.edu/lang/campus-life-activities (last visited May 8, 2023).
[12] http://web.archive.org/web/20190424205103/https://www.newschool.edu/parsons/student-life/ (accessed May 8, 2023).
[13] https://web.archive.org/web/20191205185046/https://courses.newschool.edu/ (last visited May 8, 2023).
[14] http://web.archive.org/web/20190830041923/https://www.newschool.edu/tuition-fees-billing/current-tuition/ (last visited May 8, 2023).

39. Plaintiff and the members of the Class paid the Mandatory Fee for the Spring 2020 semester so they could benefit from on-campus services and facilities offered by New School to students.

40. Despite Plaintiff and Class Members paying the Spring 2020 semester tuition and Mandatory Fee to attend an in-person educational experience, New School failed to provide the promised in-person education for the duration of the entire semester, instead providing online instruction only for 50% percent of the Spring 2020 semester.

**A. In Response to COVID-19, New School Closed Campus, Preventing Access to its Facilities, Services, Housing, and Dining, and Cancelled All In-Person Classes.**

41. On March 13, 2020, the Friday before the New School's scheduled spring break, New School cancelled its classes. New School also announced on March 13 that on-campus classes would not meet during the first week after spring break, the week of March 23 through March 27, and that New School would transition to remote instruction for all classes held between March 30 and April 12.[15]

42. On March 16, 2020, New School announced that all classes for the remainder of Spring 2020 would be conducted online, and that all public programming and special events were cancelled through the end of May 2020.[16]

43. On March 17, 2020, New School announced that student residence halls would be closed by March 23, except for students with extenuating circumstances, and that most campus buildings would be closed starting March 26, until further notice.[17]

---

[15] https://blogs.newschool.edu/community-messages/2020/03/11/coronavirus-covid-19-update-spring-break-and-the-weeks-beyond/ (last visited May 8, 2023)
[16] https://blogs.newschool.edu/community-messages/2020/03/16/all-classes-for-the-remainder-of-the-semester-will-be-conducted-online/ (last visited May 8, 2023)
[17] https://blogs.newschool.edu/community-messages/2020/03/17/coronavirus-covid-19-update-3/ (last visited May 8, 2023).

44. The New School adopted a "Double-A" grading policy for Spring 2020, under which faculty were permitted only to assign grades of A or A-minus for any courses students completed.[18]

45. The New School did not hold any in-person classes for undergraduate students between March 13, 2020 and the end of Spring 2020 term. All Spring 2020 classes after March 13, 2020 were only offered in a remote online format with no in-person instruction or interaction.

46. Most of the services for which the Mandatory Fee was assessed were also terminated or cancelled at or about this time, such as access to student health and wellness facilities, programs or services; studios and study spaces; fitness facilities; student events; and an in-person commencement.

47. Although New School provided prorated refunds for residence hall rooms and dining hall plans,[19] New School refused to adjust its tuition policies, including its policies governing tuition or the Mandatory Fees. Under those policies, the shift to exclusive remote online instruction occurred after the New School's February 23, 2020 deadline for students to receive *any* tuition refund for Spring 2020 enrollment.[20]

**B. Students Experienced Significant Losses, in Many Cases of Borrowed Funds as a Result of Defendant's Conduct.**

48. At New School, the median federal loan debt among borrowers who completed their undergraduate degree is $23,250.[21] The median monthly federal loan payment (if it were

---

[18] https://blogs.newschool.edu/community-messages/2020/03/30/the-new-school-spring-2020-grading-policy/ (last visited May 8, 2023).
[19] https://blogs.newschool.edu/community-messages/2020/04/03/important-updates/ (last accessed May 8, 2023).
[20] https://web.archive.org/web/20200617151922/https://www.newschool.edu/tuition-fees-billing/refund-schedule/ (last visited May 8, 2023).
[21] https://www.usnews.com/best-colleges/the-new-school-20662/paying

repaid over 10 years at 5.05% interest) for student federal loan borrowers who graduated from New School is $232.[22]

49.     In addition, 9% of graduating students at New School took out private loans.[23] Students with private loans had an average of $57,109 in private loan debt at graduation.[24]

50.     With the campus shut down for 50% of the semester, Plaintiff and the proposed Class Members have been deprived of the benefits of the on-campus experience as set forth above. Nevertheless, New School has refused to refund any portion of the tuition or the Mandatory Fee, despite not providing the on-campus education, services, facilities, and activities for which they paid.

51.     Plaintiff and the proposed Class Members are entitled to a refund of the money they paid New School for promised on-campus education and experience when none was provided. Students could use that money to pay for expenses, to defray the costs of lost services, or, for students who took out loans, to reduce their loan obligations.

52.     New School has retained the value of the monies paid by Plaintiff and the proposed Class Members for tuition and the Mandatory Fee for the Spring 2020 semester while failing to provide the services for which those monies were paid.

53.     Through this lawsuit, Plaintiff seeks, for herself and the other Class Members, New School's disgorgement of the tuition and the Mandatory Fee proportionate to the amount of time that remained in the Spring 2020 semester when the campus closed and corresponding campus services were curtailed or ceased being provided, and Plaintiff seeks return of those amounts on behalf of herself and the Class Members as defined below.

---

[22] *Id.*
[23] *Id.*
[24] *Id.*

11

## **CLASS ACTION ALLEGATIONS**

54. Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All New School students who were charged Spring Semester 2020 tuition and/or Mandatory Fee and enrolled in at least one in-person on-campus class (the "Class")

55. Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers.

56. Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to amend, narrow, or expand the class definitions.

57. **Numerosity:** The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff, the University reported an aggregate of 10,970 undergraduate and graduate students enrolled in 2020. The names and addresses of all such students are known to New School and can be identified through New School's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

58. **Commonality:** There are questions of law and fact common to the members of the Class including, without limitation:

    a. Whether New School accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus educational

      experience, as well as certain facilities and services throughout the Spring 2020 semester;

b.    Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus educational experience after March 13, 2020;

c.    Whether Defendant breached its contracts with Plaintiff and the Class by transitioning to remote education, and failing to provide the services and facilities to which the Mandatory Fee pertained after mid-March 2020;

d.    Whether Defendant is unjustly enriched by retaining a portion of the tuition and Mandatory Fee during the period of time New School was closed, and Plaintiff and the members of the Class were denied an in-person and on-campus educational experience and access and the services and facilities for which the Mandatory Fee was paid; and

e.    The amount of damages and other relief to be awarded to Plaintiff and the Class members.

59.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that New School stopped providing in mid-March.

60.    **Adequacy:** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the other Class members who she seeks to represent; Plaintiff has retained competent counsel who are experienced in complex class action litigation; and Plaintiff

intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

61. **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendant breached its contracts to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

62. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members is relatively small compared to the burden and expense that would be required to individually litigate their claims against New School, making it impracticable for Class Members to individually seek redress for New School's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

63. **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class Members may be readily identified through Defendant's books and records.

**FIRST CLAIM FOR RELIEF**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

64. Plaintiff repeats and re-allege the factual allegations above, as if fully alleged herein.

65. Plaintiff brings this claim individually and on behalf of the members of the Class.

66. When Plaintiff and Class members paid New School tuition and the Mandatory Fee for the Spring 2020 semester, the New School agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fee they paid pertained throughout the Spring 2020 semester. As a result, Plaintiff and each member of the Class entered into implied contracts with New School.

67. When entering into implied contracts, Plaintiff and Class members reasonably believed and expected that New School would provide them with an on-campus and in-person educational experience, as opposed to remote learning, and use of Defendant's facilities and services for the duration of the entire Spring 2020 semester as mutually agreed and intended in accordance with Defendant's publications, including but not limited to, its marketing materials, course catalogues, and other bulletins.

68. Plaintiff and Class members fully performed their obligations under their implied contracts with New School by registering for classes and paying tuition and the Mandatory Fee.

69. Defendant is in possession of all contracts, materials, circulars, advertisements and the like between Plaintiff and members of the Class on one hand, and New School on the other.

70. New School breached its contract with Plaintiff and the Class by failing to provide the promised in-person and on-campus live education as well as the services and facilities to which the Mandatory Fee pertained throughout the Spring 2020 semester, yet has retained monies paid

by Plaintiff and the Class for an on-campus and in-person educational experience and access to these services and facilities during the entire Spring 2020 semester. Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

71. Plaintiff and the members of the Class have suffered damages as a direct and proximate result of New School's breach in the amount of the prorated portion of the tuition and Mandatory Fee they each paid equal to the reduction in contracted for education and services during the portion of time the Spring 2020 semester when in-person classes were discontinued and facilities were closed by the University.

72. New School should return such portions of the tuition and Mandatory Fee to Plaintiff and each Class Member.

## SECOND CLAIM FOR RELIEF
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

73. Plaintiff repeats and re-alleges paragraphs 1 through 63 above, as if fully alleged herein.

74. Plaintiff brings this claim individually and on behalf of the members of the Class in the alternative to the First Claim for Relief.

75. Plaintiff and members of the Class conferred a benefit on New School in the form of tuition and the Mandatory Fee paid for the Spring 2020 semester. The payment of this tuition and Mandatory Fee was to be in exchange for an in-person, on-campus educational experience to be provided to Plaintiff and the members of the Class throughout the Spring 2020 semester.

76. New School knowingly accepted the benefits conferred upon it by Plaintiff and Class members.

77. New School has retained the full benefit of the tuition and Mandatory Fee payments by Plaintiff and the members of the Class for the Spring 2020 semester—without providing the benefits that Plaintiff and Class members are owed.

78. For example, New School failed to provide Plaintiff and Class Members access to many on-campus facilities and services after March 13, 2020, yet New School assessed Plaintiff and Class Members with tuition and fees that covered the cost of upkeep and maintenance of such facilities and services.

79. Plaintiff and Class members were not able to access such facilities or services remotely after March 13, 2020.

80. Plaintiff and Class members also paid tuition and fees with the understanding that such costs included the in-person classes, services, opportunities, and experiences that New School had previously marked, promoted, and/or made available prior to March 13, 2020.

81. Plaintiff and Class members were not provided an in-person education experience after March 13, 2020, and were instead provided with remote instruction only.

82. New School has been unjustly enriched by Plaintiff's and Class members' payment of tuition and the Mandatory Fee.

83. Despite not being able to provide an in-person educational experience and access to the services and facilities Plaintiff's and Class members' paid tuition and the Mandatory Fee for, New School has retained the full benefit of the tuition and the Mandatory Fee paid by Plaintiff and Class Members.

84. Allowing New School to retain the tuition and Mandatory Fee paid for in-person on campus education and experiences, after reducing the benefit provided and the costs incurred by New School, unjustly enriches the Defendant.

85. The costs incurred for having an online only program is significantly lower than the overhead needed to provide classes and services on campus.

86. Allowing New School to retain the tuition and Mandatory Fee paid for in-person on campus education and experiences, after reducing the benefit provided and the costs incurred by New School, unjustly enriches the Defendant.

87. Accordingly, New School has been unjustly enriched and should return the prorated portion of the tuition and Mandatory Fee that Plaintiff and Class members each paid equal to the reduction in benefit for education and services during the remainder of the Spring 2020 semester when in-person classes were discontinued and facilities were closed by New School.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c) For compensatory damages in an amount to be determined by the trier of fact;

(d) For an order of restitution and all other forms of equitable monetary relief;

(e) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

(f) Awarding pre- and post-judgment interest on any amounts awarded; and,

(g) Awarding such other and further relief as may be just and proper.

**DEMAND FOR TRIAL BY JURY**

A jury trial is demanded on all claims so triable.

Dated: May 8, 2023　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Gary F. Lynch*
　　　　　　　　　　　　　　　　　　　Gary F. Lynch
　　　　　　　　　　　　　　　　　　　Jamisen A. Etzel
　　　　　　　　　　　　　　　　　　　Nicholas A. Colella
　　　　　　　　　　　　　　　　　　　LYNCH CARPENTER, LLP
　　　　　　　　　　　　　　　　　　　1133 Penn Avenue, 5th Floor
　　　　　　　　　　　　　　　　　　　Pittsburgh, Pennsylvania 15222
　　　　　　　　　　　　　　　　　　　Telephone: 412-322-9243
　　　　　　　　　　　　　　　　　　　Facsimile: 412-231-0246
　　　　　　　　　　　　　　　　　　　gary@lcllp.com
　　　　　　　　　　　　　　　　　　　jamisen@lcllp.com
　　　　　　　　　　　　　　　　　　　nickc@lcllp.com

　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*