```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| LILY MENG, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>  -v-<br><br>THE NEW SCHOOL,<br><br>      Defendant. | 23-cv-3851(JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

    Before the Court is the motion of defendant The New School ("TNS") to dismiss plaintiff's complaint on behalf of a putative class of TNS students. The complaint seeks reimbursement of tuition and fees paid for the Spring 2020 based upon the shift to entirely remote learning precipitated by the COVID-19 pandemic. Defendant seeks dismissal of plaintiff's breach of contract and unjust enrichment claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court must deny the motion.

    **I.  Plaintiff's Allegations**

    Plaintiff Lily Meng enrolled as an undergraduate student at TNS for the Spring 2020 semester, which ran from approximately January 21,

2020, through May 11, 2020. Compl. ¶ 15. Plaintiff alleges that, when she enrolled in TNS, she and similarly situated students entered into an implied contract with the school to provide an in-person, on-campus education. To support the existence of such an implied contract for in-person educational services, plaintiff begins by noting that, prior to enrollment at TNS, each student is given the option to elect between taking classes in-person or online, and that she specifically chose the in-person option. Compl. ¶¶ 21, 36. Plaintiff also points to various marketing materials, course catalogues, and other school bulletins that she contends identified the in-person nature of classes as an important component of TNS's educational offerings. *See* Compl. ¶¶ 25-34.

Plaintiff alleges that TNS breached its contractual obligations when, in March 2020 in response to the outbreak of the COVID-19 pandemic, TNS announced that classes would be held online and that in-person classes would be cancelled for the remainder of the Spring 2020 semester. Compl. ¶¶ 40-47. Plaintiff alleges that as a result of this shift, and the closure of associated on-campus facilities, she and similarly situated students were not provided with an education of comparable value to that for which she and other students had contracted. Compl. ¶ 50. At the same time, plaintiff alleges, the shift to online learning substantially reduced TNS's costs, resulting in a windfall for TNS. Compl. ¶¶ 46-47, 74-85.

## II. <u>Legal Standard</u>

A complaint survives a motion to dismiss brought under Rule 12(b)(6) if, accepting its factual allegations as true, it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim bears facial plausibility where it is supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Where defendant bears the burden of proof on an affirmative defense, it "may be considered on a motion to dismiss where the defense appears on the face of the pleading and the documents incorporated therein." *Ashmeade v. Citizens Bank*, 2018 WL 3093963, at *6 (S.D.N.Y. June 22, 2018).[1]

## III. <u>Discussion</u>

### A. **Breach of Contract**

Under New York law, upon enrolling in a university an implied contract is formed between the institution and the student. *See Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011); *Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 481 (S.D.N.Y. 2015) ("[T]he relationship between a university and its students is contractual in nature."). The terms of this contract "are

---

[1]   Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

3

contained in the university's bulletins, circulars and regulations made available to the student." *Papelino*, 633 F.3d at 93 (quoting *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 (N.Y. App. Div. 1987)). To state a claim for breach of contract, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

Defendant offers four arguments why plaintiff has failed to adequately allege a breach of contract claim: (1) plaintiff has failed to adequately allege the existence of an unqualified contractual promise to provide an in-person education, (2) the defense of impossibility defeats plaintiff's claim, (3) plaintiff has not alleged a cognizable injury and (4) plaintiff waived her rights under the contract by electing to attend classes remotely. The Court addresses each in turn.

1. Adequacy of Allegations of Breach.

Defendant's principal argument is that plaintiff "does not and cannot point to any promise (implied or otherwise) to provide *only* in-person classes and services for the entirety of any particular academic semester no matter the circumstances." Def.'s Mem. at 3. Plaintiff relies on a body of prior district court opinions that required a student-plaintiff in a COVID-19 tuition refund action such as this to "identify specific language in the school's bulletins, circulars, catalogues and handbooks which establishes the particular

4

'contractual' right or obligation alleged by the student." *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 421 (S.D.N.Y. 2021).[2] A claim would survive a motion to dismiss under this standard where plaintiff alleged some more particular commitment to provide in-person teaching, typically coupled with some unique interest of the student-plaintiff in such services. *See, e.g.*, *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d at 423-26 (dismissing claim against Columbia where plaintiff failed to identify specific promise to provide exclusively in-person coursework, but declining to dismiss similar claim against PACE where university's website said "on-campus" courses would be "taught with only traditional in-person, on-campus class meetings" (emphasis added)).

Application of this standard would likely warrant dismissal of plaintiff's claims. However, these cases predate the Second Circuit's recent decision in *Rynasko v. New York University*, 63 F.4th 186 (2d Cir. 2023), in which the Second Circuit clarified the pleading standard applicable in COVID-19 tuition refund actions. *Rynasko* involved a suit by an NYU dance student seeking reimbursement of a portion of her tuition for the Spring 2020 semester when learning went fully remote. In an implicit rejection of the quasi-heightened pleading standard that had been applied by lower courts in this district, the Second

---

[2] *See, e.g.*, *Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 413 (S.D.N.Y. 2022); *Amable v. New Sch.*, 2022 U.S. Dist. LEXIS 82582, at *17 (S.D.N.Y. May 6, 2022); *Zagoria v. N.Y. Univ.*, 2021 U.S. Dist. LEXIS 50329, at *10 (S.D.N.Y. Mar. 17, 2021) ("NYU's alleged statements do not rise to the level of a specific promise to provide in-person educational services.").

Circuit framed the relevant inquiry whether "a reasonable factfinder [could] conclude that [when plaintiff] enrolled in the Spring 2020 semester, the parties mutually intended and implicitly agreed that [the university] would provide *generally in-person courses, activities, facilities, and services*." 63 F.4th at 198 (emphasis added).

The Court concludes that the Complaint has met this standard. When plaintiff and similarly situated students enrolled at TNS, they were given the option of choosing between online and in-person courses. *See* Compl. ¶¶ 3, 21, 36. Meng alleges she selected exclusively in-person courses when presented with this option and yet was denied the benefits of that selection for approximately half of the semester. *See id.* ¶¶ 4, 37. The Complaint goes on to describe various TNS promotional materials that touted the schools on-campus resources, the value of campus life in the heart of New York City, and the benefits of on-campus coursework. *See id.* ¶¶ 24-35. While defendant is correct that plaintiff does not identify any specific "promise . . . to provide *only* in-person classes and services," Def.'s Mem. at 3, the forgoing allegations plausibly allege a mutual expectation that students would receive "generally in-person courses, activities, facilities, and services." *Rynasko*, 63 F.4th at 198.[3]

---

[3]   Indeed, defendant appears to concede such an expectancy existed at the time of contracting. *See* Defs. Mem. at 3 ("Plaintiff's alleged facts make clear that her expectation (as well as that of TNS) was that education and services at TNS in general would be physically in-person and on campus.").

6

The centrality of an in-person education to the underlying bargain is illustrated by the following counterfactual: imagine if TNS had cancelled all in-person classes <u>without</u> the COVID-19 pandemic as a justification. If defendant's position were adopted, TNS could have done so with impunity, and students would have been left utterly without recourse. This hypothetical "exposes the weakness of [TNS's] position that it never impliedly promised an in-person experience." *Rynasko* 63 F.4th at 200.

Defendant responds to this hypothetical by underscoring the exigencies of the COVID-19 pandemic, arguing the parties did "not create a contract that classes would always and under all circumstances take place [in-person]." Def.'s Reply at 3 n.1. But as a general matter, the reason for a parties' breach of a contractual commitment has no bearing on the existence of that agreement in the first instance. In effect, defendant asks the Court to find that an implicit force majeure clause exists in the contract. The Court declines to adopt this argument because a common-law doctrine already exists to address such a contention: the impossibility defense. *See Sokoloff v. Nat'l City Bank of New York*, 208 A.D. 627, 630, (N.Y. App. Div. 1924) (describing the impossibility defense as "subject[ing] [the contract] to an implied condition that if, before the time of performance, without fault of either party, [a] thing [essential to the contracts performance] ceases to exist or be available, the contract shall be dissolved and the parties excused from performance"); *Rynasko*,, 63 F.4th at 201 ("To the extent NYU argues that its decision to suspend

7

in-person operations during the Spring 2020 semester was reasonable, even necessary, under the unprecedented circumstances of the COVID-19 pandemic, New York law offers NYU a potentially appropriate shield: the defense of impossibility or impracticability."). While that defense may ultimately prove meritorious, it is, as explained *infra*, not resolvable on a motion to dismiss.

Defendant next argues that TNS's shift to remote courses did not constitute a breach because its course catalog contained a disclaimer which states that the catalog described the "plans of [TNS] at the time of publication" and that TNS "reserves the right to change without notice any matter contained in this publication, including but not limited to tuition, fees, policies, degree programs, names of programs, course offerings, academic activities, academic requirements, facilities, faculty, and administrators." Def.'s Mem. at 4. A similar disclaimer was also included on TNS's website. *Id.*

This argument again runs afoul of *Rynasko*. That case found a similar, even more specific,[4] disclaimer contained in NYU's course catalog did not "defeat[] plaintiffs' implied contract claim by reserving to NYU the right to move all courses online." *Rynasko*, 63

---

[4]   NYU's disclaimer stated: "The policies, requirements, course offerings, schedules, activities, tuition, fees, and calendar of the school . . . are subject to change without notice at any time at the sole discretion of the administration. Such changes may be of any nature, including, but not limited to, the elimination of the school, programs, classes, or activities; the relocation or modification of the content of any of the foregoing; and the cancellation of scheduled classes or other academic activities." *Rynasko*, 63 F.4th at 208 (Parker, J., concurring in part and dissenting in part).

F.4th at 199. Instead, the Second Circuit indicated that such a disclaimer is simply "a single data point in the context of all the other factors shaping the contours of the implied contract." *Id.* at 200. It further noted that "New York law disfavors constructions that give one party 'an unfair and unreasonable advantage over the other,'" which is what the universities broad construction of the disclaimer would do. *Id.* (quoting *Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, Inc.* 84 N.Y.2d 430, 438 (1994)).

Applying *Rynasko*, the Court concludes that the existence of this disclaimer is insufficient to defeat plaintiff's claim. Even to the extent this disclaimer could be construed as granting the university the right to shift all coursework online, it does not do so unambiguously and so is not a basis to grant a motion to dismiss. *See In re Columbia Tuition Refund Action*, 523 F. Supp. 3d at 425 (concluding disclaimer permitting PACE to make "adjustment[s] to class schedules" was "[a]t best . . . ambiguous and, '[o]n a motion to dismiss a breach of contract claim,' the Court must 'resolve any contractual ambiguities in favor of the plaintiff'" (quoting *Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 86 (2d Cir. 2015)).

Finally, defendant argues that, even if there was a promise to provide in-person classes and coursework, plaintiff has failed to allege that promise was breached because she was able to complete one-half of the semester in-person. This argument misses the mark. As explained above, plaintiff has plausibly alleged that TNS committed

9

<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>

to provide a generally in-person education. While cancelling a few class sessions and moving them online might not adequately allege breach of this promise, the same cannot be said as to the cancellation of in-person education for half of an entire semester.[5]

### 2. Impossibility Defense

Defendant argues that plaintiff's claims must be dismissed based upon impossibility of performance (although defendant largely abandons this argument in its reply brief). Impossibility "excuses a party's performance only when the subject matter of the contract or the means of performance makes performance objectively impossible." *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 22 (2d Cir. 2018). "The [New York] Court of Appeals explained that a defense to contract performance such as impossibility should be applied narrowly and only in extreme circumstances due in part to judicial recognition that the purpose of contract law is to allocate risks." *Gap Inc. v. Ponte Gadea*

---

[5] Defendant briefly references the so-called educational malpractice doctrine, although it does not use that phrase. Def.'s Mem. at 12; *see Brittain v. Trustees of Columbia Univ. in the City of New York*, 2021 WL 3539664, at *3 (S.D.N.Y. Aug. 11, 2021) (noting that, under educational malpractice doctrine, "New York courts are hesitant to entertain actions that ask the Court to involve itself in the subjective professional judgements of trained educators"). This doctrine is not a sufficient basis to grant defendant's motion. *Rynasko* and several district courts have held challenges, such as plaintiff's, alleging breach of specific contractual commitments do not implicate a school's educational judgment. *See Rynasko*, 63 F.4th at 197, n.13 ("Plaintiffs in this case do not challenge NYU's exercise of its academic and educational discretion in structuring NYU's courses; their claim for breach of implied contract arises from the wholesale, campus-wide suspension of in-person courses, services, facilities, and activities."); *Brittan*, 2021 WL 3539664, at *3; *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d at 425.

*New York LLC*, 524 F. Supp. 3d 224, 237 (S.D.N.Y. 2021). Resolution of such a defense "requires an examination into the conduct of the party pleading the defense in order to determine the presence or absence of [] fault," and accordingly "[i]n all but the clearest cases this will involve issues of fact" not resolvable on a motion to dismiss. *Lowenschuss v. Kane*, 520 F.2d 255, 265-66 (2d Cir. 1975); *Polk v. Del Gatto, Inc.*, 2021 WL 3146291, at *9 (S.D.N.Y. July 23, 2021) (declining to grant motion to dismiss on impossibility defense in connection with COVID-19). The Court finds that defendant's impossibility defense is not resolvable on a motion to dismiss for at least two reasons.

*First*, "[t]he remedy for impossibility, or its related and more applicable principle, frustration of purpose, is rescission of the contract." *Brittain*, 2021 WL 3539664, at *9. For this reason, TNS's impossibility defense would not relieve it of its obligation to return any portion of the tuition or fees plaintiff paid to which the university is not entitled. *See, e.g.*, *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 89 (2d Cir. 2021) (Calabresi, J.) ("Even if the impossibility doctrine could 'excuse [defendant's] performance,' it could not relieve him 'from the obligation of repayment of the amount received.'" (quoting *Sokoloff v. Nat'l City Bank of N.Y*, 204 N.Y.S. 69, 71 (1924)).[6]

---

[6] While beyond the scope of this motion, the Court notes that it is possible this argument would permit only recovery of restitutionary damages, rather than the expectation interest discussed *infra* Section III.A.3 (i.e. the difference in the market value of an in-person education and the online education received). *Compare Young v. Rosenberg*, 2017 WL 3267769, at *2 (S.D.N.Y. Aug. 1, 2017) ("Because a restitution award does not provide the plaintiff with what was due her under the contract, but rather seeks to restore the reasonable value

11

*Second*, while it is determinable from the face of the complaint and judicially noticeable documents -- such as the New York governor's executive orders -- that it was impossible for TNS to hold in-person classes for some portion of the Spring 2020 semester, it is not clear that it was impossible to hold classes for the entire second half of the spring semester. For example, as COVID-19 waves ebbed and flowed, the comparative strictness of the government's lockdown orders, and associated capacity limits, may have changed. It is a factual question beyond the scope of a motion to dismiss whether at some point in this period the school could have reopened but wrongfully declined to do so.

3. Adequacy of Damages Allegations

Defendant argues plaintiff has failed to adequately allege any quantifiable damages. Def.'s Mem. at 17-18. Defendant's principal support for this argument is the fact that TNS charged the same tuition for in-person and online classes, allegedly demonstrating plaintiff have suffered no compensable harm. Defendant also attempts to justify the decision not to return certain specific student fees, relying

---

of any benefit conferred upon the defendant by the plaintiff, it is not governed by the terms of the parties' agreement."), *with* 30 Williston on Contracts § 77:127 (4th ed.) ("If performance is interrupted due to temporary impracticability, there may come a time later when this impracticability disappears and resuming performance becomes possible. If one party has already paid money or transferred property in an amount greater than the benefit received from the other party, then an adjustment should be made so that the consideration on both ends of the deal balance out in the end."). Because the parties do not focus on this point in their briefing, the Court reserves resolution of this question to a later date.

largely on factual contentions in an accompanying affidavit. (Tellingly, defendant appears to abandon these arguments in its reply brief.)

To state a claim for breach of contract, the damages a plaintiff alleges "must be not merely speculative, possible, and imaginary, but they must be *reasonably certain*, and such only as actually follow or may follow from the breach of the contract." *Tractebel Energy Mktg., Inc.* v. *AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007). However, "'[c]ertainty,' as it pertains to general damages, refers to the *fact* of damage, not the amount." *Id.* "[W]hen it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach." *Id.*

Here, defendant's complaints go to the amount of any damages, not to their existence. Plaintiff is seeking to recover the difference in value between the in-person education that the parties purportedly bargained for and the online education she received. *See* Pls. Opp. at 11-13. While defendant argues that the price it charges for these two things is the same, damages are measured by the difference in the contract price and the market value of the goods, not the price defendant elects to charge. Plaintiff has plausibly alleged that the market value of an in-person education is greater than the value of the online education she received. While TNS's subjective valuation of its online offerings may be relevant to the damages inquiry, it is

13

not dispositive, particularly on a motion to dismiss. *See Bergeron v. Rochester Inst. of Tech.*, 2020 WL 7486682, at *8 (W.D.N.Y. Dec. 18, 2020) (rejecting similar argument).

Furthermore, plaintiff correctly objects to defendant's attempt to parse the components of the fees plaintiff alleges should have been refunded but were not, arguing that this is an impermissible attempt to use extrinsic documents to contradict the well-pled allegations of the complaint. *See* Pls. Opp. at 13-14. While defendant responds that certain of the sources it relies on -- such as the school's website -- were incorporated into the complaint by reference and are judicially noticeable, Def.'s Reply at 6 n.3, those documents do not indisputably establish that it was appropriate for TNS to retain the fees in question. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources *whose accuracy cannot reasonably be questioned*." (emphasis added)).

For example, TNS's website describes the University Service Fee as follows: "This fee covers a range of supportive services for students at The New School. Starting in fall 2019, students will also receive added conveniences such as lifetime access to e-transcripts and e-diplomas and one replacement ID card (if their card is lost or stolen)." Def.'s Reply at 6 n.3. While one reading of this statement is that the University Service Fee covers only "lifetime access to e-transcripts and e-diplomas and one replacement ID card," an equally plausible reading of the statement is that such services are only a

14

subset of the "range of supportive services" the fee covers. Put simply, any factual dispute as the propriety of TNS retaining these fees is not resolvable on a motion to dismiss.

### 4. Waiver

Defendant finally argues that plaintiff "waived any right to pursue a claim against the University due to such breach because [p]laintiff remained enrolled, continued to attend classes and complete coursework remotely, [and] accepted the corresponding course credits toward her degree." Def.'s Mem. at 20-21.

"Waiver is the voluntary abandonment or relinquishment of a known right." *Excel Graphics Techs., Inc. v. CFG/AGSCB 75 Ninth Ave.*, L.L.C., 1 A.D.3d 65, 69 (N.Y. App. Div. 2003). "[W]aiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection." *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 850 N.E.2d 653, 658 (N.Y. 2006). "Generally, the existence of an intent to forgo such a right is a question of fact." *Id.* The burden is on defendant to establish a waiver occurred. *Id.*

The only fact defendant points to in support of its waiver argument is plaintiff's continued attendance of TNS after it moved online and received credits towards her degree. This act is equivocal at best and is not necessarily inconsistent with an intent to later sue for damages. *See 200 E. 87th St. Assocs. v. MTS, Inc.*, 793 F. Supp. 1237, 1251 (S.D.N.Y.)("[T]he intent to waive must be clearly established and cannot be inferred from doubtful or equivocal acts .

. . ."), *aff'd sub nom.*, 978 F.2d 706 (2d Cir. 1992). The fact she received some benefit from the contract (i.e., credit towards her degree) does not established she received the full value of the contract originally bargained for. Given the factual nature of the waiver inquiry, the Court finds dismissal on this basis to be inappropriate at this stage of the case.

**B.  Unjust Enrichment**

Plaintiff alleges TNS was unjustly enriched when it wrongfully retained the entirety of plaintiff's tuition, as well as certain other fees, even though TNS failed to provide the contracted-for services and TNS saved money as a result of the cessation of on-campus coursework. *See* Compl. ¶¶ 46-47, 74-85. To state a claim for unjust enrichment under New York law, a plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Columbia Mem'l Hosp. v. Hinds*, 172 N.Y.S.3d 649, 658 (2022). Defendant raises two related arguments as to why plaintiff's unjust enrichment claim should be dismissed. As explained below, neither argument has merit.

*First*, defendant argues that plaintiff has failed to allege any funds were retained "against equity and good conscience," because its campus closures were a reasonable response in the circumstances. Defendant points to case law that suggests, in determining whether this element is satisfied, "New York courts look to 'whether the defendant's conduct was tortious or fraudulent.'" Defs. Mem. at 22

16

(quoting *Hassan v. Fordham Univ.*, 515 F. Supp. 3d 77, 93 (S.D.N.Y. 2021)).

Defendant's argument incorrectly frames the relevant inquiry. Even if it were true that TNS had no choice but to shut down its campus, and that doing so was the right thing to do at the time, it does not follow that it is just or reasonable to allow defendant to retain the entirety of plaintiff's tuition. If, as plaintiff alleges, "[t]he costs incurred for having an online only program [are] significantly lower than the overhead needed to provide classes and services on campus," Compl. ¶ 85, then it may be that defendant should be required to turn over some or all of those savings. If one accepts this allegation as true, plaintiff's claim that TNS has unjustly enriched itself through the COVID-19 pandemic is entirely plausible.

Of course, upon further development of the factual record, it may become apparent that TNS did not benefit from any such savings or that it is otherwise equitable for TNS to retain the funds that it did, but such a factual determination is inappropriate to resolve on a motion to dismiss. *See Shaffer v. George Washington Univ.*, 27 F.4th 754, 769 (D.C. Cir. 2022) ("[D]etermining whether the transition to online learning resulted in a net enrichment to [the university] is a fact-intensive question inappropriate for resolution at the motion-to-dismiss stage."); *Flatscher v. Manhattan Sch. of Music*, 551 F. Supp. 3d 273, 287 & n.14 (S.D.N.Y. 2021) (rejecting similar argument based on allegation substantively identical to plaintiff's).

17

*Second*, defendant argues plaintiff's unjust enrichment claim should be dismissed because an implied contract existed between plaintiff and TNS concerning the relevant subject matter. Where a "valid and enforceable" contract exists between the parties, "recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142, (2009). The *Rynasko* court was confronted with a similar argument. While acknowledging the general rule that an unjust enrichment claim will not lie where a contract exists, the court nevertheless declined to dismiss the plaintiff's unjust enrichment claim, reasoning that the plaintiff was permitted to assert its claims in the alternative at this stage of the litigation. *See Rynasko*, 63 F.4th at 201-02 (citing Fed. R. Civ. P. 8(d)(2)).

While both parties here agreed that an implied contract existed, if that contract were later found to be unenforceable -- for example, on impossibility grounds -- then an action for unjust enrichment might still be appropriate. *Id.* This reasoning applies with equal force here and warrants rejection of defendant's argument.

*        *        *        *        *

For the reasons stated herein, the Court denies defendant's motion to dismiss the complaint.

SO ORDERED.

New York, NY
August 11, 2023

JED S. RAKOFF, U.S.D.J.